UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLAS G.,<br><br>    Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,[1]<br><br>    Defendant. | Case No. 5:19-cv-00635-KES<br><br>MEMORANDUM OPINION AND ORDER |

## I.

## BACKGROUND

Nicolas G. ("Plaintiff") applied for Social Security disability benefits in January 2015 alleging disability commencing on June 19, 2010, due to carpal tunnel syndrome ("CTS") and pain in both wrists, right wrist surgery, a neck injury, and numbness in his left hand. Administrative Record ("AR") 269, 323. On October 3, 2017, an Administrative Law Judge ("ALJ") conducted a hearing at which Plaintiff, who was represented by an attorney, appeared and testified, as did

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

a vocational expert ("VE").  AR 53-87.  On December 15, 2017, the ALJ issued an unfavorable decision.  AR 33-46.  The ALJ found that Plaintiff suffered from the severe impairments of "bilateral carpal tunnel syndrome, neuropathy, depression, anxiety, and polysubstance abuse."  AR 39.  The ALJ concluded that despite these impairments, Plaintiff had a residual functional capacity ("RFC") to perform less-than-light work (including lifting 20 pound occasionally and 10 pounds frequently) with, as relevant to this appeal, the following additional limitations on the use of his hands: "He cannot perform constant or repetitive forceful gripping or torqueing with his bilateral upper extremities.  He can occasionally perform fine finger manipulation with his bilateral upper extremities."  AR 41.

Based on this RFC and the VE's testimony, the ALJ found that Plaintiff could not perform his past relevant work as a landscape laborer, but he could work as a housekeeping cleaner (Dictionary of Occupational Titles ["DOT"] 323.687-014) and an automatic car wash attendant (DOT 915.667-010).  AR 45-46.  The ALJ concluded that Plaintiff was not disabled.  AR 46.

## II.
## ISSUE PRESENTED

This appeal presents the sole issue of whether the ALJ gave specific and legitimate reasons for discounting the opinions of Plaintiff's treating physician, Dr. Rosa Cortes.  (Dkt. 18, Joint Stipulation ["JS"] at 4.)

## III.
## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole.  42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such relevant evidence as a reasonable person might accept as

adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the district court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

In deciding how to resolve conflicts between medical opinions, the ALJ must consider that there are three types of physicians who may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those who did not treat or examine the plaintiff. See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion is generally entitled to more weight than that of an examining physician, which is generally entitled to more weight than that of a non-examining physician. Id. If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. Id. The ALJ must give specific and legitimate reasons for rejecting a treating physician's opinion in favor of a non-treating physician's contradictory opinion or an examining physician's opinion in favor of a non-examining physician's opinion. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007).[2]

---

[2] For claims filed on or after March 27, 2017, new rules govern the way physicians' opinions are analyzed. See 20 C.F.R. § 404.1520c; Douglas P. v. Saul, No. 17-cv-8668-PLA, 2019 WL 3338847, at *3 n.4 (C.D. Cal. July 25, 2019) (noting that "the new regulations eliminate the term 'treating source,' as well as what is customarily known as the treating source or treating physician rule"). These rules do not apply here, however, because Plaintiff's claim was filed in

3

Here, the opinions in the "Medical Source Statement" by Dr. Cortes (AR 509-11) were contradicted by the opinions of consultative examining physician Dr. Bernabe (see AR 463-67), meaning that the dispositive question is whether the ALJ gave "specific, legitimate reasons" for discounting Dr. Cortes's opinions.

## IV.

## SUMMARY OF RELEVANT EVIDENCE

Plaintiff was born in 1970. AR 457. In the last 15 years before the hearing, he had not held a full-time job. AR 63. In 2008, he worked as a cook and dishwasher at Frazee Community Center. AR 408; see also AR 64, 520. At the time of the October 2017 hearing, his most recent work involved landscaping 3 days/week. AR 63. While his records showed income in 2012 and 2013, he testified that he had not worked even part-time since 2010. AR 63-64. He was, however, frequently using marijuana and methamphetamine. AR 61-63. He had a driver's license and still drove occasionally. AR 60, 469.

### A. Medical Records from 2010-2013.

In the summer of 2010, Plaintiff underwent a nerve conduction study which led to a diagnosis of bilateral CTS. AR 512. Plaintiff testified that he had surgery on his right hand in 2010 for CTS. AR 65. A January 2014 progress note from Dr. Cortes recounting Plaintiff's medical history gives the date of this surgery as March 28, 2011. AR 484. The AR contains no other records about this surgery.

In July 2010, Dr. Cortes completed a "Certificate of Disability" indicating that Plaintiff was disabled from July 7, 2010, through September 6, 2010, but she opined that he could return to work on September 7, 2010. AR 446.

In September 2010, Dr. Cortes completed another check-the-box form indicating that Plaintiff's condition began in November 2009, that he had "a medically verifiable condition that would limit or prevent him/her from performing

---

2015. AR 269.

4

certain tasks," and that he was unable to work.  AR 447.  Somewhat paradoxically, she also indicated that he did not "have any limitations that affect his/her ability to work or participate in education or training."  Id.  She repeated this opinion in October 2010.  AR 449.

The administrative record does not contain other medical records for the years 2010-2013.  As discussed below, some later records mention past referrals for physical therapy (AR 484) and occupational therapy (AR 518), but Plaintiff provided no such therapy records.

### B. Medical Records from 2014.

On January 9, 2014, Plaintiff saw Dr. Cortes to "follow up" on "hand pain."  AR 484.  He reported pain at level "5" in both of his "hands."  Id.  Dr. Cortes noted that he had gone to physical therapy after his 2011 surgery, but therapy did not help his pain.  Id.  She adjusted his pain medication prescriptions.  AR 485.

In May 2014, Dr. Cortes noted, "Patient was referred to orthopedics for surgery of his left hand but he failed 3 times.  I will refer back to Ortho when he is ready to go to his appointment."  AR 482.  Plaintiff reported hand and neck pain at level "4."  AR 481.

In June 2014, Plaintiff complained to Dr. Cortes of knee, foot, and ankle pain.  AR 478-79.  She ordered x-rays and prescribed pain medication.  AR 479.  This record does not discuss hand pain, other than noting his ongoing treatment for CTS.

In November 2014, Plaintiff complained to Dr. Cortes of lower back pain.  AR 476, 526.  She noted his history of CTS and prescribed pain medication.  AR 477.  Again, this record does not discuss hand pain.

In December 2014, Plaintiff went to the Emergency Room ("ER") complaining of chest pain.  AR 500.  The ER staff noted that Plaintiff had a "left-hand puncture wound – bleeding controlled."  AR 501.  The ER intake record does not describe the origin of the wound, but it states, "son bit by dog today" and that

Plaintiff "remain[ed] anxious for son who is currently in ED [the emergency department]." AR 500-01. After a negative chest x-ray and normal echocardiogram, the ER discharged Plaintiff in stable condition. AR 501, 504-05.

C.     **2015 Assessment by Dr. Bernabe.**

On January 12, 2015, Plaintiff broke a metacarpal bone in his right hand when he "hit wall" and was treated at a Hand Clinic. AR 454, 475; compare AR 360 (Plaintiff attributed January 2, 2015 fracture of "right risk [sic]" to a fall). On January 18 and 29, 2015, he reported his right-hand pain at level "2." AR 474, 496, 523. X-rays were performed and his right arm/hand were put in a cast/splint. AR 454, 457, 495. In February 2015, he was referred for occupational therapy, but the administrative record contains no records from that therapy. AR 458.

In March 2015, Plaintiff underwent an orthopedic evaluation by Dr. Bernabe on behalf of the Social Security Administration. AR 463-67. Dr. Bernabe observed that Plaintiff's right arm was in a cast, so he could not assess Plaintiff's right-hand grip strength. AR 463-64. Plaintiff stated that "he hit the wall on February 11, 2015 [sic], and sustained a fracture of the right fifth metacarpal." AR 463.

Dr. Bernabe measured Plaintiff's left-hand grip strength as "20/20/20." AR 464. He observed no other visual abnormalities affecting Plaintiff's upper extremities, and he found Plaintiff's motor strength "grossly within normal limits at 5/5 in all extremities." AR 465-66. Dr. Bernabe assessed functional limitations for Plaintiff's right hand (which was in the cast) but none for his left. AR 467. He opined that Plaintiff, at that time a young man in his forties, could lift 50 pounds occasionally and 25 pounds frequently. Id.

Plaintiff told Dr. Bernabe that he would start physical therapy in April 2015 (AR 463), but the administrative record contains no notes from those therapy sessions. Dr. Bernabe recommended that Plaintiff "be reevaluated in approximately three months [after] the cast is removed." AR 467.

## D. Medical Records from 2015.

In April and May of 2015, Plaintiff had appointments with Dr. Cortes to discuss again a possible referral for surgery to address his left-hand CTS. AR 471-72, 520-21. He reported his left-hand pain as "3." Id. Dr. Cortes's notes reflect that he was employed at the Frazee Community Center as a "hopper." AR 520, 526. Dr. Cortes referred him for an orthopedics consultation and instructed him to follow up with her in three months. AR 473, 522.

In June 2015, Plaintiff returned to the Hand Clinic which assessed that the broken metacarpal in his right hand had "healed." AR 488. The Clinic assessed that "sensation" and "motor" in his right hand were "intact," but range of motion was decreased. Id. The Clinic faxed Dr. Cortes for authorization for occupational therapy, but the administrative record contains no indication that Plaintiff every attended therapy. AR 489, 493.

In July 2015, Plaintiff complained to Dr. Cortes of right hand pain and numbness, rating his pain at level as "1." AR 518. Dr. Cortes noted that Plaintiff scheduled the appointment to complete paperwork for his disability benefits application. Id. He was "complaining of pain and weakness in both hands" and "Exam" notes state, "bilateral hands weak; unable to hold anything over a pound." Id. Dr. Cortes adjusted his medication and instructed him to follow up in two or three months. AR 519.

At his follow-up appointment in September 2015, Dr. Cortes noted that Plaintiff had a "history of CTS" but was complaining of left knee pain. AR 514-15. She ordered knee x-rays. AR 516. This is the last appointment with Dr. Cortes for which Plaintiff has provided records.

## E. 2015 Medical Source Statement by Dr. Cortes.

Dr. Cortes completed a Medical Source Statement on July 20, 2015. AR 509-11. She stated that she had been treating Plaintiff since July 2008 for CTS and attached his 2010 nerve conduction test results. AR 509, 512. As a symptom, she

wrote, "unable to hold anything." AR 509. She opined that Plaintiff could "never" lift "less than 10 lbs" and had "significant" limitations reaching, handling, and fingering. AR 510. She opined that he could not use his left or right hands to "grasp, turn, twist objects" or for "fine manipulations." Id. She estimated that Plaintiff would miss more than four days of work each month. AR 511. Finally, when asked if Plaintiff's impairments were "reasonably consistent with the symptoms and functional limitations described in the evaluation," she checked "no." Id.

**F.  Medical Records from 2016.**

The Court sees no medical records from 2016 in the administrative record.

**G.  Medical Records from 2017.**

In 2017, Plaintiff had several appointments with a Dr. Monarrez. In April 2017, Plaintiff discussed a visit to Loma Linda Hospital (which he characterized as "a minor stroke") with Dr. Monarrez. AR 570. On May 4, 2017, Plaintiff again told Dr. Monarrez that he had been to Loma Linda and now complained of "numbness to hands" for the month prior. AR 568. Dr. Monarrez referred him the same day to the Arrowhead Regional Medical Center ("Arrowhead") for an EKG. AR 543.

Plaintiff told Arrowhead that Loma Linda had diagnosed him as suffering a TIA (transient ischemic attack) and he was experiencing "left side weakness." AR 543. Arrowhead staff observed a normal range of motion in his extremities and 4/5 left upper extremity muscle strength. AR 544. Arrowhead staff ordered records from Loma Linda, which showed only a diagnosis of "atypical chest pain" that was "likely attributed to COPD or other pulmonary disease." AR 548. After Plaintiff was informed of this, he then told Arrowhead that he was experiencing "bilateral numbness and tingling sensation in his upper extremities especially the left side," a condition that was "chronic" over the last three years due to CTS; he said that he was scheduled to have left-hand surgery within a month. AR 547.

8

Plaintiff thereafter continued to see Dr. Monarrez about once a month. On May 16, 2017, he returned to Dr. Monarrez for lab results and medication refills. AR 567. On May 30, 2017, Plaintiff told Dr. Monarrez that he had experienced "hand pain since 2009." AR 566. Dr. Monarrez referred him to neurology. Id. In June 2017, Plaintiff reported left hand pain at a level of "10+." AR 565. In July 2017, Dr. Monarrez continued to note Plaintiff's drug abuse and CTS. AR 562. His appointments from August and September 2017 discussed a sore throat and back pain, but not hand pain. AR 560-61. None of these records discuss potential surgery or any change in his treatment to address increased hand pain.

## IV.

## DISCUSSION

### A. The ALJ's Treatment of Dr. Cortes's Opinions.

The ALJ gave Dr. Cortes's opinion "less weight" for the following three reasons:

> **[1]** Dr. [Cortes's[3]] opinion is without substantial support from any objective or clinical diagnostic findings, which renders this opinion less persuasive. **[2]** Moreover, the opinion is expressed in quite conclusory terms, providing very little explanation of the evidence relied on in forming that opinion. **[3]** The doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant and seemed to uncritically accept as true most, if not all, of what that claimant reported. Yet, as explained

---

[3] The ALJ referred to Dr. Cortes as Dr. Combs. AR 44. Rather than attributing this to a misreading of the doctor's handwriting, Plaintiff's counsel argues that this "misidentification calls into question whether the ALJ realized that Dr. Cortes' treatment notes and referrals comprise most of the record." (JS at 7.) The Court finds it far more likely that the ALJ had trouble reading the doctor's signature, and Plaintiff's counsel also referred to Dr. Cortes as Dr. Combs in briefing to the Appeals Council. See, e.g., AR 444.

> elsewhere in this decision, there exists good reasons for questioning the reliability of the claimant's subjective complaints.

AR 43-44.

### 1. **Reason One: Lack of Objective Support.**

Plaintiff argues that Dr. Cortes provided objective support by attaching the nerve conduction study that shows Plaintiff suffers from CTS. (JS at 7.) While the nerve conduction study provides objective support for diagnosing Plaintiff with CTS, it does not provide objective support for the extreme level of impairment expressed in Dr. Cortes's Medical Source Statement. Dr. Cortes essentially opined that that Plaintiff cannot hold anything, lift anything, or use his hands. AR 509-10. Dr. Cortes does not describe any objective testing that she ever did to support these opinions, such as tests to assess Plaintiff's grip strength, dexterity, fine motor skills, or manual range of motion. She does not describe observations from their appointments, such as whether Plaintiff could use a pen to complete insurance paperwork, whether he needed assistance disrobing or dressing, or whether he drove himself to her office.

In contrast, when Dr. Bernabe measured Plaintiff's left-hand grip strength objectively, he did not note any abnormality and found Plaintiff's use of his left hand unlimited. AR 464, 467.

Thus, substantial evidence supports that ALJ's finding that the opinions in Dr. Cortes's Medical Source Statement lacked objective support.

### 2. **Reason Two: Conclusory Findings.**

Plaintiff argues that Dr. Cortes's treating records provide a sufficient explanation for her opinions. (JS at 7.)

This argument fails, because Dr. Cortes's treating records treating records do not support (or even address) some of the work-preclusive opinions in the Medical Source Statement. Those opinions are expressed in terse, conclusory terms, either by checking boxes or using a few words. For example, Dr. Cortes checked a box

indicating that Plaintiff would be absent from work four or more days each month. Excessive absenteeism is not typically associated with CTS, and nothing in Dr. Cortes's treating records explains how she arrived this opinion. Her treating records do not suggest that Plaintiff routinely missed appointments with her or was unable to fill his prescriptions regularly. Far from believing that Plaintiff was too disabled to maintain a work schedule, her treating records from November 2014 and April 2015 indicate that Plaintiff was employed. AR 520, 526.

As another example, when asked by the questionnaire to identify the "clinical findings and objective signs" supporting her opinions, Dr. Cortes wrote, "weakness in bilateral hands." AR 509. She does not explain if this was based on her own observations, some kind of testing that she administered, or Plaintiff's subjective complaints. She does not mention that Plaintiff had broken a metacarpal bone in his right hand six months earlier.

In July 2015 (i.e., the same month that Dr. Cortes complete the Medical Source Statement), Plaintiff complained to Dr. Cortes of right hand pain and numbness, but he rated his pain at level as "1." AR 517. This was an improvement since January 2014 (level "5" per AR 484) and January 2015 (level "2" per AR 474) and fails to support Dr. Cortes's opinion that Plaintiff was experiencing too much pain to use his hands for work-related activities.

### 3. **Reason Three: Uncritical Reliance on Plaintiff's Complaints.**

Plaintiff argues that there is no evidence suggesting that Dr. Cortes relied on Plaintiff's subjective complaints rather than her own medical assessments. (JS at 8.) Not so. Her treating notes from the same month as her Medical Source Statement record that Plaintiff reported that he was "unable to hold anything over a pound." AR 518. Dr. Cortes then wrote in the Medical Source Statement that Plaintiff was "unable to hold anything," essentially parroting Plaintiff's subjective complaint. AR 509. Since Plaintiff told Dr. Cortes that his hand pain was only at level "1" that month (AR 517) but she still opined that he could not use his hands

at all, it is a logical inference that she relied on his subjective complaints.

In sum, the reasons given by the ALJ are supported by substantial evidence and provide a specific, legitimate basis for rejecting Dr. Cortes's extreme opinions. The ALJ found that Plaintiff suffers from bilateral CTS and restricted him to "less than light work" with only "occasional" fingering and no constant or forceful gripping. AR 39, 41. Plaintiff has failed to demonstrate that these limitations do not adequately account for the functional impairments caused by his CTS.

## V.
## CONCLUSION

For the reasons stated above, IT IS ORDERED that judgment shall be entered AFFIRMING the decision of the Commissioner.

DATED: December 03, 2019

_Karen E. Scott_
KAREN E. SCOTT
United States Magistrate Judge